UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| CHARLES SIMPKINS, | ) |
|---|---|
| Plaintiff, | ) |
| vs. | ) NO. 2:16-CV-354 |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

This matter is before the United States Magistrate Judge with the consent of the parties and by order of reference [Doc. 13] for disposition and entry of a final judgment. Plaintiff's Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") applications under the Social Security Act, Titles II and XVI, were denied after a hearing before an Administrative Law Judge ("ALJ"). This action is for judicial review of the Commissioner's final decision per 42 U.S.C. § 405(g). Each party filed a dispositive motion [Docs. 18 & 20] with a supporting memorandum [Docs. 19 & 21].

**I.  APPLICABLE LAW – STANDARD OF REVIEW**

A review of the Commissioner's findings is narrow. The Court is confined to determining (1) whether substantial evidence supported the factual findings of the ALJ and (2) whether the Commissioner conformed with the relevant legal standards. 42 U.S.C. § 405(g); *see Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). "Substantial evidence" is evidence that is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support the challenged conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn is one of fact. *LeMaster v. Sec'y of Health & Human*

*Servs.,* 802 F.2d 839, 841 (6th Cir. 1986). A Court may not try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Even if the Court were to resolve factual issues differently, the Commissioner's decision must stand if substantial evidence supports it. *Listenbee v. Sec'y of Health & Human Services,* 846 F.2d 345, 349 (6th Cir. 1988). But, a decision supported by substantial evidence "will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2007). The Court may consider any evidence in the record regardless of whether it has been cited by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d. 528, 535 (6th Cir. 2001).

A claimant must be under a "disability" as defined by the Act to be eligible for benefits. "Disability" includes physical and mental impairments that are "medically determinable" and so severe as to prevent the claimant from (1) performing her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. 42 U.S.C. § 423(a).

A five-step sequential evaluation applies in disability determinations. 20 C.F.R. §§ 404.1520 & 416.920. Review ends with a dispositive finding at any step. *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The complete review poses five questions:

1. Has the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the "Listings"), 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's [Residual Functional Capacity], can he or she perform his or her past relevant work?

5. Assuming the claimant can no longer perform his or her past relevant work — and also considering the claimant's age, education, past work experience,

and RFC — do significant numbers of other jobs exist in the national economy which the claimant can perform?

20 C.F.R. §§ 404.1520(a)(4) & 416.920(a)(4).

The claimant has the burden to establish an entitlement to benefits by proving the existence of a disability under 42 U.S.C. § 423(d)(1)(A). *See Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). The Commissioner has the burden to establish the claimant's ability to work at step five. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## II.   RELEVANT FACTS AND PROCEDURAL OVERVIEW

### A.   Procedural History

Charles T. Simpkins ("Simpkins") filed DIB and SSI applications in April 2012. He alleged an onset date of June 2, 2013, and had insured status through December 31, 2014. (Doc. 9, Transcript p. 17) (reference to "Tr" and the page denote the administrative record). He alleged multiple impairments he believed to be disabling, including back, shoulder and hand conditions. Simpkins' claims were initially denied in January 2014 and upon reconsideration in May 2014. (Tr. 17). An ALJ conducted a hearing in July 2015 and a supplemental hearing in December 2015. Brief testimony was provided at the first hearing; the bulk of the testimony was supplied at the supplemental hearing by Simpkins and a vocational expert. (Tr. 17, 549-60).

The ALJ followed the five-step analysis in evaluating the claims. The ALJ found Simpkins had severe medical impairments, but was not disabled. The findings were:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2014;

2. The claimant has not engaged in substantial gainful activity since June 2, 2013, the alleged onset date (20 CFR 404.1571 *et seq.* and 416.971 *et seq.*);

3. The claimant has the following severe impairments: degenerative disc disease of the lumbar spine and thoracic spine; degenerative joint disease of the left shoulder; neck disorder; arthritis; history of left wrist fracture;

3

depression; and anxiety (20 CFR 404.1520(c) and 416.920(c));

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926);

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he is limited to the restrictions indicated by Dr. Robert Blaine in Exhibit B11F and he is limited to simple, unskilled work with occasional contact with co-workers and the public. In Exhibit B11F, Dr. Robert Blaine indicated that the claimant could lift and carry 20 pounds occasionally and 10 pounds frequently, sit for two hours at a time for a total of eight hours in an eight-hour day, stand for 30 minutes at a time for a total of four hours in an eight-hour day, and walk for 30 minutes at a time for a total of four hours in an eight-hour day. He noted that the claimant could reach overhead, reach (all others), handle, finger, feel, and push/pull frequently with the right hand. He noted that the claimant could reach overhead and reach (all others) frequently and handle, finger, feel, and push/pull occasionally with the left hand. He reported that the claimant could frequently operate foot controls. He noted that the claimant could occasionally climb ramps and stairs, climb ladders or scaffolds, stoop, kneel crouch and crawl, but never balance. He indicated that the claimant could frequently operate a motor vehicle and occasionally work around moving mechanical parts, but should never work at unprotected heights;

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965);

7. The claimant was born [in] . . . 1963 and was 50 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563 and 416.963);

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964);

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2);

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the

national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)); and

11. The claimant has not been under a disability, as defined in the Social Security Act, from June 2, 2013, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 17-34).[1] The Appeals Council denied Plaintiff's review request. (Tr. 1).

**B.    Evidence in the Record**

The ALJ summarized the various evidence. (Tr. 20-27). Simpkins' brief includes an overview of the record evidence and medical history [Doc. 19, pp. 2-9]; the Commissioner's brief provides a similar discussion. [Doc. 21, pp. 2-8]. The transcript includes the reports of the consulting medical examiner and State agency reviewers who addressed Simpkins' conditions.

**III.    ANALYSIS**

Simpkins asserts that the Vocational Examiner ("VE") was unfamiliar with the limitations recommended by the consulting medical examiner, Dr. Robert Blaine, upon which the ALJ based hypothetical questions to the VE. As a result, he argues the VE's testimony was unresponsive. Simpkins also asserts that a conflict exists between the VE's testimony and the Dictionary of Occupational Titles ("DOT").

**A.    Overview of Vocational Expert Testimony**

In July 2015, Dr. Blaine issued a consulting medical opinion with a full narrative regarding Simpkins' medical conditions.[2] (Tr. 536). Dr. Blaine diagnosed left shoulder pain secondary to arthritis, upper back pain secondary to scoliosis, lower back pain secondary to disc disease and arthritis, rheumatoid arthritis, and history of a left wrist fracture with residual pain and poor range of motion. (Tr. 538). Dr. Blaine also completed a Medical Source Statement of Ability to Do Work-

---

[1] A discussion follows many of the findings. Such discussion is not repeated here unless necessary.

[2] This was Dr. Blaine's second consultative examination of Simpkins. The first was performed on November 4, 2013 (Tr. 443-46).

Related Activities concurrent with his opinion report. (Tr. 540-45). He set limitations for lifting and carrying, sitting, standing, walking, and use of hands and feet. (*Id.*). Regarding the use of hands, Dr. Blaine opined that Simpkins could frequently handle, finger, feel, push/pull with his right hand and only occasionally do those actions with his left (Tr. 542). He also specified postural and environmental limitations. (*Id.*).

The VE was present at the supplemental hearing for Simpkins' testimony, including his own description of his limitations. After Simpkins testified, the ALJ called the VE to provide testimony as to available work. Simpkins' counsel did not object to the VE or challenge her credentials. (Tr. 557).

The ALJ relied on Dr. Blaine's report in presenting hypothetical questions to the VE. He first asked the VE whether she was familiar with Dr. Blaine's reports at Exhibit B11F. (Tr. 536-545). She confirmed familiarity, including the limitations specified. (Tr. 558). Rather than recite the multitude of limitations, the ALJ asked whether there would be jobs available for a person with the limitations set forth in Dr. Blaine's report[3] and additionally limited Simpkins to simple, unskilled work with occasional contact with co-workers and the public. (Tr. 558).

The VE responded by advising there would be simple, light jobs. The ALJ ensured clarity by confirming that the VE would be identifying light, not medium, jobs. The VE responded:

> "Yeah. And handling is just limited to frequently. It's no, you know, in the left hand, the fingering is occasional. And the feeling and pushing and the pulling. And so it's a slightly limited light. And with that, there are the following jobs that I can give. An inventory clerk, DOT 222.687-010, SVP 2, 5,000 Tennessee, 222,000 U.S. A dining room attendant, DOT 311.677-018, SVP 2, 2,000 Tennessee, 158,000 United States. I take it, well, occasional public would give a half range dishwasher . . . 311.677-010, SVP 2. And a half range would give 2,000 Tennessee, and 110,000 U.S. And that's to preclude any hand washing, hence the occasional

---

[3] This District has historically approved the incorporation of reports or assessments by reference. *See, e.g., Carroll v. Astrue,* No. 2:10-CV-138, 2011 WL 3739141, at *4 (E.D. Tenn. July 28, 2011) (it was not error for the ALJ to ask the VE to consider restrictions set out in a medical report); *Anderson v. Astrue,* No. 2:07–CV–140, 2009 WL 32935, at *4–5 (E.D. Tenn. Jan.6, 2009) (it was not error for the ALJ to refer the VE to a medical report in the hypothetical question).

6

fingering.

(Tr. 559).

The ALJ next asked whether there would be jobs for a hypothetical claimant subject to the limitations Simpkins identified in his testimony. The VE advised there would be no jobs. (*Id*.). The ALJ concluded the hearing by asking the VE if her answers were consistent with the DOT; she confirmed they were. (*Id*.) Simpkins' counsel declined to question the VE. (*Id*.).

**B.     Vocational Expert Testimony in Response to Hypothetical Question**

Simpkins contends that the VE did not comprehend or consider all of Dr. Blaine's limitations. He alleges the VE did not apply Dr. Blaine's limitation of occasional handling because the VE initially commented that Simpkins was limited to frequent handling in both hands and then omitted occasional handling from her clarification of the hand limitations.

The VE was clearly knowledgeable about Simpkins' history and limitations since she listened to his testimony and testified she had reviewed his file. (Tr. 557). When the ALJ turned to the issue of whether work was available, the VE specifically confirmed familiarity with Dr. Blaine's report, which specifically identified the limitations regarding the use of hands. As noted, Dr. Blaine found that Simpkins could *frequently* handle, finger, feel and push/pull with his right hand, but only *occasionally* do those actions with his left hand (Tr. 542). Her familiarity was further demonstrated by the immediate clarification of the general hand limitations after first indicating the limitations were applicable to both hands. The VE's testimony halving the number of dishwashing positions available to Simpkins to account for his left hand limitations also demonstrates she accounted for the left hand limitations.[4] Lastly, when Simpkins' counsel was

---

[4] Dr. Blaine's report contains nearly 45 discrete limitations; occasional handling is just one of those limitations. To require the VE to recite every limitation would result in inadequate answers in response to any hypothetical question based upon such limitations that are referenced in an exhibit. Requiring that would undermine the VE's ability to rely on the report in testifying as historically approved by this Court.

asked whether he had questions, his response was, "[y]our honor, the same hypothetical questions. We have nothing additional for the expert." (Tr. 559). This indicates Simpkins saw no lack of clarity as to the VE's understanding of the limitations. The Court finds substantial evidence supports the ALJ's hypothetical to the VE and that the VE's testimony was not ambiguous.

C.  **Conflicts Between Dictionary of Occupational Titles and Vocational Examiner Testimony**

Simpkins asserts that conflicts exist between the DOT and the VE's testimony as to certain occupations in which he could work and the DOT. He first contends that the dining room attendant position identified by the VE is described by the DOT as a medium occupation. He contends this conflicts with the light work level the VE identified. Simpkins also argues that the dishwasher job is titled a "cafeteria attendant" position by the DOT, and the DOT description does not include dishwashing duties.

Before addressing these assertions, the Court observes that Simpkins does not contend error occurred with regard to the inventory clerk occupation that the VE testified a claimant with his limitations can perform. The availability of the inventory clerk occupation supports the ALJ's decision regardless of whether there are conflicts with the dining room attendant and dishwasher occupations the VE identified. *See Staymate v. Comm'r of Soc. Sec.*, No. 16-cv-3896, 2017 WL 902136 (6th Cir. 2017); *Martin v. Comm'r of Soc. Sec.*, 170 F.App'x 369, 374 (6th Cir. 2006). The Court will, however, address Simpkins' allegations of error.

As the Commissioner aptly notes, the DOT descriptions list a range of jobs within particular occupational categories. Not every job within an occupational title requires all of the tasks and duties identified in the DOT descriptions. The Sixth Circuit has recognized this: "[T]he DOT's job classifications are collective descriptions of 'occupations' that can encompass numerous jobs." *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 605 (6th Cir. 2009) (citing S.S.R.

8

00-4p and S.S.R. 96-9p explaining that "[a]n 'occupation' refers to a grouping of numerous individual 'jobs' with similar duties"). Thus, the occupational titles identified by the VE include a range of jobs with varying duties. While a single job within an occupational category may not clearly fall within the parameters of the RFC and limitations of a claimant, the entire category is not eliminated. Further, Simpkins cites no basis to exclude the entire occupational categories.

With regard to conflicts between a VE's testimony and the DOT, SSR 00-4p provides that an ALJ should "identify and obtain a reasonable explanation for any conflicts between occupational evidence provided by VEs … and information in the . . .[DOT]…." *Policy Interpretation Ruling: Titles II & XVI: Use of Vocational Expert & Vocational Specialist Evidence, & Other Reliable Occupational Info. in Disability Decisions*, SSR 00-4p, at *1 (S.S.A. Dec. 4, 2000). The ALJ's duty is satisfied if the ALJ asks the VE whether her testimony is consistent with the DOT. *See Martin v.* 170 F.App'x at 374. Further, an ALJ "is not required to affirmatively 'conduct an independent investigation into the testimony of witnesses to determine if they are correct.'" *Johnson v. Comm. of Soc. Sec.*, 535 F.App'x 498, 508 (6th Cir. 2013) (quoting *Martin*, 170 F.App'x at 374). The ALJ is also not required to address how a conflict is resolved where a claimant fails to call attention to the potential conflict. *Martin*, 170 F.App'x at 374.

Here, the ALJ asked the VE whether her answers were consistent with the DOT at the conclusion of the hearing and she affirmed consistency. (Tr. 559). The ALJ then offered Simpkins' counsel the opportunity to question the VE. (*Id.*). Counsel declined to do so. (*Id.*).

As in *Martin,* the Court finds Simpkins' assertion that the VE's testimony was inconsistent with the DOT is without merit. The ALJ acted in accordance with Sixth Circuit authority by making the consistency inquiry. The ALJ was not required to investigate further given the response and the absence of questions or objections by Simpkins. The Court finds the ALJ's

decision is in accordance with the applicable authority, and substantial evidence exists to support the determination that the VE's testimony was consistent with the DOT.

**D.     Work Exists in Substantial Numbers**

Simpkins does not explicitly assert that the ALJ erred in finding that the number of jobs that exist in the national economy is significant. But, this is inherent to the assertion that elimination of two of three occupations identified by the VE constitutes reversible error. In other words, he implicitly argues that the remaining unchallenged occupation does not offer significant numbers of jobs that he can perform. Thus, the Court will address this topic.

Under step five, the ALJ must determine if significant numbers of jobs exist in the national economy that the claimant can perform. Both the Act and regulations address this topic. The Act provides that "work which exists in the national economy means work that exists in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 423(d)(2)(A). The regulations explain the "significant numbers" requirement:

> Work exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which you are able to meet with your physical or mental abilities and vocational qualifications. Isolated jobs that exist only in very limited numbers in relatively few locations outside of the region where you live are not considered "work which exists in the national economy". We will not deny . . . benefits on the basis of the existence of these kinds of jobs.

20 C.F.R. §§ 404.1566(b) & 416.966(b).

The Sixth Circuit also provides guidance. First, "[t]here is no bright line boundary separating a 'significant number" from an insignificant numbers of jobs. *Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir. 1988). In determining if a number is significant, the ALJ may look to various factors, including the level of claimant's disability, the reliability of the vocational expert's testimony, the reliability of the claimant's testimony, the distance the claimant is capable of

traveling to engage in the assigned work, the isolated nature of the jobs, and the type and availability of the work. *Hall v. Bowen*, 837 F.2d 272 (6th Cir. 1988). These factors are, however, "*suggestions . . . the ALJ need not explicitly consider each factor*," and the Act and regulations "make it clear that the test is whether work exists in the national economy, not in the plaintiff's neighborhood." *Harmon v. Apfel*, 168 F.3d 289, 292 (6th Cir. 1999) (emphasis added).

Here, the VE testified a hypothetical claimant with a light RFC and the multiple limitations described by the ALJ could perform the jobs of inventory clerk, along with two other occupations that the Court will not consider for purposes of this "significant numbers" analysis. (Tr. 559). The VE testified the number of inventory clerk jobs in the regional economy ranged from 500 regionally (i.e. Tennessee) to 220,000 nationally. (*Id.*).

In finding the numbers of jobs identified by the VE were significant, the ALJ addressed *Hall's* suggested factors. The ALJ first determined that Simpkins' statements regarding the intensity, persistence and limiting effects of his symptoms were not entirely credible. (Tr. 22, 26). This addresses the testimony's reliability. The ALJ acknowledged Simpkins' disability level by referencing his limitations and the light RFC that was adopted. (Tr. 21). This demonstrates the ALJ's consideration of Simpkins' disability level. While the ALJ did not expressly address the reliability of the VE's testimony, Simpkins stipulated to the VE's credentials and her testimony was unchallenged. (Tr. 557).

Extensive authority discusses the numbers that satisfy the threshold of "significant." There is no "magic number" for determining the amount of jobs that constitute significant work in the national economy, but there are various cases in the Sixth Circuit that indicate as few as 200 regional jobs and 6,000 jobs in the national economy are sufficient. *See Taskila v. Comm'r of Soc. Sec.*, 819 F.3d 902 (6th Cir. 2016) (6,000 in national economy jobs "fits comfortably" within what

courts have found significant); *Martin v. Comm'r of Soc. Sec.*, 170 F.App'x 369, 375 (6th Cir. 2006) (870 regional jobs constitutes significant work); *see also Nejat v. Comm'r of Soc. Sec.*, 359 F.App'x 574, 578-79 (6th Cir. 2009) (finding 2,000 jobs significant); *Putnam v. Astrue*, 2009 WL 838155 (E.D. Tenn. Mar. 30, 2009) (finding 200-250 regional jobs and 75,000 national jobs constitutes a significant number). Certainly, 5,000 jobs regionally and 222,000 nationally comports with Sixth Circuit authority. The Court finds substantial evidence supports the determination that the numbers of jobs identified by the VE, including those for the inventory clerk occupation alone, are significant.

## IV. CONCLUSION

Based upon the foregoing, the Court finds substantial evidence exists to support the ALJ's decision. Plaintiff's motion for judgment on the pleadings [Doc. 18] is DENIED and the Commissioner's motion for summary judgment [Doc. 20] is GRANTED.

SO ORDERED:

s/Clifton L. Corker
UNITED STATES MAGISTRATE JUDGE